UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| RICHARD SUERTH, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 06 C 1177 |
| EXXON MOBIL CORPORATION, a Foreign Corporation; and MOBIL OIL CORPORATION, a Foreign Corporation, | ) ) ) ) ) | Judge John W. Darrah |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Richard Suerth, filed suit, alleging negligence against the Defendants, Exxon Mobil Oil Corporation and Mobil Oil Corporation (collectively, "ExxonMobil"). Currently before the Court is ExxonMobil's Motion for Summary Judgment.

### FACTS

On March 8, 2000, Suerth was employed with Van Hoesen Industries as a laborer and truck driver, a position he had held for 17 years prior to that date. (Def.'s 56.1(a)(3) Statement ¶¶ 1, 3). That day, Suerth's duties included pumping water out of the storage tanks located at ExxonMobil's Des Plaines terminal. (Id., ¶ 2). Suerth had been pumping water out of the storage tanks at the Des Plaines terminal for approximately 10 years prior to March 8, 2000, and had driven his truck into the Des Plaines facility on at least 200 occasions during that time period. (Id., ¶¶ 4, 5). The Des Plaines facility is composed of numerous storage tanks surrounded by a gravel and earthen dike system. (Id., ¶ 8).

On March 8, 2000, Suerth stopped at the Des Plaines terminal office before proceeding to tank number 5. (Def.'s 56.1(a)(3) Statement ¶ 6). Suerth had previously pumped water out of tank number 5 at least 100 times. (Id., ¶ 7). Although terminal operators directed him to certain areas of the terminal each time he was there, Suerth was not told where specifically to park his truck. (Plaint.'s Response ¶ 10; Def.'s 56.1(a)(3) Statement ¶ 10). He parked his truck on the earthen dike next to tank number 5. (Def.'s 56.1(a)(3) Statement ¶ 9). Suerth terminated the pumping operations before completion, as a result of a developing thunderstorm. (Id., ¶ 11). He was in the process of placing the last hose on his truck when he lost his footing and slipped down the dike wall. (Id., ¶ 12). Suerth's fall was not caused by rain or mud but by the loose gravel at the terminal and the lack of enough room to walk. (Id., ¶ 13).

On March 8, 2000, and each previous date Suerth visited the Des Plaines terminal, he felt the gravel at the terminal posed a dangerous condition; Suerth slipped on the gravel 2 to 3 times per visit. (Def.'s 56.1(a)(3) Statement ¶¶ 15–17; Def.'s Exhibit B, p. 37, lines 4–11). As such, Suerth had slipped on the gravel at least 500 to 700 times prior to his fall on March 8, 2000. (Def.'s 56.1(a)(3) Statement ¶ 18). Despite recognizing these dangers, on March 8, 2000, Suerth voluntarily chose to park his truck where he did within the area to which he had been directed by the terminal operator and continued to perform his duties. (Def.'s 56.1(a)(3) Statement ¶ 19; Plaint.'s Response ¶ 19). On March 10, 2000, Suerth signed an ExxonMobil employee statement form wherein he indicated "No" when asked "Did an unsafe condition contribute to or cause the accident?" (Def.'s 56.1(a)(3) Statement, ¶ 14).

Safety and construction regulations for dike walls are provided by NFPA 30, § 2.3.2.3.2 *et seq.* and CFR 1910.106 *et seq.* (Def.'s 56.1(a)(3) Statement ¶ 21). There is no evidence that the walls of the dike in question were too steep, that the dikes could not be made of gravel, or

that there was not enough space on the dike road for Suerth to conduct his business. (Id., ¶¶ 22, 23, 25). Furthermore, there is no evidence that ExxonMobil constructed the dike walls. Finally, there is no evidence that Suerth was not free to park his truck as he determined in order to perform his job duties, other than the instructions he would receive from the terminal operators directing him to a particular area of the terminal. (Id., ¶¶ 24, 10; Plaint.'s Response ¶ 24).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmoving party. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001).

Where subject-matter jurisdiction in federal court is premised on diversity jurisdiction under 28 U.S.C. § 1332, the court must apply the substantive law of the forum state. *Davis v. G.N. Mort. Co.*, 396 F.3d 869, 876 (7th Cir. 2005); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). "[T]he task of the federal court sitting in diversity is to ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." *Allstate Ins. Co. v. Menards, Inc.*,

285 F.3d 630, 637 (7th Cir. 2002) (*Allstate*). "In the absence of prevailing authority from the state's highest court, federal courts ought to give great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently . . . ." *Allstate*, 285 F.3d. at 638.

*Existence of Duty*

"To state a cause of action for negligence, a plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, that the defendant breached the duty, and that an injury was proximately caused by the breach." *Prostran v. City of Chicago*, 349 Ill. App. 3d 81, 85 (2004) (*Prostran*). When considering a plaintiff's claim of negligence, it is axiomatic that a court must first determine that the defendant owed a legal duty to the plaintiff. Without such a determination, there can be no finding of liability, as "a legal duty is a prerequisite to liability." *Belluomini v. Stratford Green Condo. Assoc.*, 346 Ill. App. 3d 687, 691 (2004) (*Belluomini*). "Whether a duty of care exists is a question of law, appropriately determined by the trial court on a motion for summary judgment." *Sandoval v. City of Chicago*, 357 Ill. App. 3d 1023, 1027 (2005) (*Sandoval*).

In Illinois, the following factors are relevant to the determination of duty: "(1) the foreseeability that defendant's conduct will result in injury to another; (2) the likelihood of injury; (3) the magnitude of [the burden of] guarding against it; and (4) the consequences of placing that burden upon defendant." *Sandoval*, 357 Ill. App. 3d at 1027. Where a plaintiff was

4

an invitee on defendant's property and alleges that an injury was caused by a condition on that property, the foreseeability of injury is decided pursuant to Section 343 of the Restatement (Second) of Torts, which provides that:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

*True v. Greenwood Manor West, Inc.*, 316 Ill. App. 3d 676, 679 (2000), *citing* Restatement (Second) of Torts § 343 (1965).

Under Illinois law, "property owners are entitled to the expectation that those who enter upon their property will exercise reasonable care for their own safety." *Sandoval*, 357 Ill. App. 3d at 1028. Accordingly, "persons or entities who own or control land are not required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious;" no duty to warn or protect others may be imposed upon a defendant with respect to such "open and obvious" dangers. *Sandoval*, 357 Ill. App. 3d at 1027, *citing Bucheleres v. Chicago Park Dist.*, 171 Ill. 2d 435, 447 (1996). A condition is considered to be open and obvious when "the condition and risk are apparent to and would be recognized by a reasonable person exercising ordinary perception, intelligence and judgment in visiting an area." *Sandoval*, 357 Ill. App. 3d at 1028. Thus, whether a condition is open and obvious depends upon the objective knowledge of a reasonable person; a plaintiff's subjective knowledge is irrelevant. *Sandoval*, 357 Ill. App. 3d at 1028.

ExxonMobil argues that the potentially dangerous nature of the loose gravel incline upon which Suerth slipped and fell should be classified as an "open and obvious" condition and asserts that such a determination should preclude a finding that ExxonMobil owed any legal duty to warn or protect Suerth. The emphasis on Suerth's personal history of slipping at the Des Plaines terminal is misplaced as it only establishes his own subjective knowledge. ExxonMobil has accurately identified the inclined dike wall as an open and obvious danger. Illinois courts have repeatedly held that reasonable persons exercising ordinary care can be expected to watch where they are walking and to appreciate the risk of slipping and falling associated with traversing potentially dangerous terrain. *See Sandoval*, 357 Ill. App. 3d at 1029 (finding a large sidewalk defect to be an open and obvious condition); *Shields v. State of Illinois*, 47 Ill. Ct. Cl. 313 (1994) (finding a large spill on stairway to be an open and obvious condition). A reasonable person exercising ordinary perception, intelligence, and judgment would undoubtedly recognize that walking or even standing upon an incline covered entirely in loose gravel presents just such a risk.

However, Illinois courts also recognize that "the fact that a condition is known or obvious is not a *per se* bar to the existence of a duty, because a defendant will still owe a duty where he should anticipate the harm despite the obviousness of the condition." *Belluomini*, 346 Ill. App. 3d at 691. Two types of exceptions to the open-and-obvious doctrine are commonly recognized. The first is the "forgetfulness" or "distraction" exception, which provides that "a landowner will owe a duty to a plaintiff to protect against a known or obvious condition where it is reasonably foreseeable that the plaintiff will be distracted or forget about the condition after having momentarily encountered it." *Belluomini*, 346 Ill. App. 3d at 691. The second is the "deliberate encounter" exception, which "imposes a duty where the landowner has reason to

anticipate that the plaintiff will proceed in the face of the known or obvious danger because the benefit of doing so outweighs the apparent risk." *Belluomini*, 346 Ill. App. 3d at 691.

"The deliberate encounter exception has most often been applied in cases involving economic compulsion, as where workers are compelled to encounter dangerous conditions as part of their employment obligations." *Prostran*, 349 Ill. App. 3d at 89, *citing Sollami v. Eaton*, 201 Ill. 2d 1, 16 (2002); *see also LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 392 (1998) (*LaFever*)(finding it reasonably foreseeable that employees would risk walking on slippery edge trim); *Preze v. Borden Chemical, Inc.*, 336 Ill. App. 3d 52, 59 (2003) (*Preze*) (finding it reasonably foreseeable that employee would risk using ladder coated in slippery resin). In employment situations, the deliberate encounter exception has been held applicable even where workers could have chosen to avoid the open and obvious condition. *See Ralls v. Village of Glendale Heights*, 233 Ill. App. 3d 147, 155 (1992) (*Ralls*) (finding it reasonably foreseeable that workers would risk walking across snow-covered earthen incline, rather than use a safer but more inconvenient path, in order to reach a particular door).

The facts of this case appear to fit squarely within the "deliberate encounter" exception, just as Suerth proposes. Suerth's employment obligations included connecting hoses from his truck, which was parked atop the dike, to tank 5, located at the bottom of the gravel-covered incline. Suerth's deposition testimony suggests that although he was not told where specifically to park, he placed the truck in the position that best facilitated pumping. Furthermore, testimony from the deposition of Dennis Kroll, an operator at the Des Plaines terminal, suggests that it was not uncommon for truck drivers to ignore the available stairs, which were inconveniently placed in relation to some of the pump valves. These statements, viewed in the light most favorable to Suerth, present a nearly identical fact pattern to that in *Ralls*, where it was held to be foreseeable

7

that workers would use a risky, but convenient, snow-covered incline to perform job duties more efficiently. Accordingly, genuine issues of material fact exist as to whether ExxonMobil owed Suerth a duty.

*Applicability of Assumption of Risk*

ExxonMobil also argues that it cannot be held liable because "a plaintiff who voluntarily assumes a risk of harm arising from a defendant's negligent conduct cannot [generally] recover for such harm." *Hastings v. Exline*, 326 Ill. App. 3d 172, 176 (2001) (*Hastings*) (finding that plaintiff assumed the risk of slipping and falling when she used slippery back stairs to mobile home rather than front stairs), *citing* Restatement (Second) of Torts § 496A (1965). Indeed, where a danger is open and obvious, Illinois courts have determined that a plaintiff's voluntary assumption of the risks associated with that danger can prevent liability. *See Bonavia v. Rockford Flotilla 6-1, Inc.*, 348 Ill. App. 3d 286 (2004) (*Bonavia*). ExxonMobil has placed heavy emphasis on the holding in *Bonavia* and claims *Bonavia* and the instant case to be factually analgous. They are not.

In presenting *Bonavia* as an "identical" case, ExxonMobil overlooks the significance of economic compulsion within Illinois' deliberate encounter jurisprudence. In *Bonavia*, algae and vegetation on a dock were found to have presented an open and obvious "slippery condition," which barred a finding of duty on the part of the dock operator. *Bonavia*, 348 Ill. App. 3d at 292, 296. Specifically, the *Bonavia* court determined that because a portion of the dock was not covered in vegetation, a less risky alternative existed. The plaintiff was found to have assumed the risk of injury by walking upon the slippery portion of the dock, and "the deliberate encounter exception [therefore] d[id] not apply." *Bonavia*, 348 Ill. App. 3d at 295.

On the other hand, in cases with economic compulsion, a court may decide that the deliberate-encounter exception applies even where the plaintiff could have chosen a safer alternative, as was the case in *Ralls*. The *Ralls* court reasoned that the ability to do one's job efficiently provides sufficient benefit to the invitee to outweigh the apparent risk of encountering obvious dangers on the job. *Hastings*, 326 Ill. App. 3d at 176; *but see Ralls*, 233 Ill. App. 3d at 156 ("[I]t was reasonably foreseeable that workers would use the shortest path . . . ."). Therefore, Illinois courts are much more likely to apply the deliberate-encounter exception in employment situations such as presented here.

Here, because genuine issues of material fact exist as to whether the deliberate-encounter exception applies, it cannot be determined at this time whether the assumption-of-risk doctrine relieves ExxonMobil of any duty owed to Suerth.

## CONCLUSION

For the foregoing reasons, ExxonMobil's Motion for Summary Judgment is denied.

Dated: August 29, 2007

JOHN W. DARRAH
United States District Court Judge

9